# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JOHN DUPREE,

      PLAINTIFF,

VS.                       CASE NO.: CV-10-J-3422-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record. This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal or remand of a final decision of the Commissioner.  All administrative remedies have been exhausted.

## Procedural Background

The plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on April 8, 2008 (R. 69-72), alleging an inability to work since November 2, 2007[1] (R. 126), due to sleep apnea, feet and ankle swelling, knee pain, bursitis, back pain and leg pain (R. 57, 126).  The administrative law judge (ALJ) reached a determination that the plaintiff was not disabled at any time through the date of his decision, November 17, 2009 (R. 24-25).  The plaintiff appealed this decision to the Appeals Council which denied his request for review on October 7,

---

[1]The plaintiff later amended this date to May 15, 2008 (R. 36).

2010 (R. 1-3).  The ALJ's decision thus became the final order of the Commissioner.
*See* 42 U.S.C. § 405(g).  This action for judicial review of the agency action followed
(doc. 1).  The court has considered the entire record and whether the decision of the
ALJ is supported by substantial evidence.  For the reasons set forth herein, this case
is **REVERSED** and **REMANDED.**

### Factual Background

The plaintiff was born on May 22, 1956, completed high school and had
apprenticeship training (R. 38, 42-43). He was laid off from the job he had held since
1980, but testified that he can no longer do that job because of the lifting and
climbing, and because he feels like a zombie all the time due to sleep apnea (R. 47).
The plaintiff has been to a sleep clinic and had surgery but stated it has not helped
him get more sleep (R. 48-49).   He uses a CPAP machine every night (R. 51).
Because he does not sleep well at night, he is tired and takes naps during the day (R.
52).  He stated that the sleep apnea, plus his recent heart trouble and back pain
combine to keep him from working (R. 46).

In addition to back pain, the plaintiff has problems with his knees and an elbow
(R. 50).  He has bursitis in his elbow and has had it drained, but it comes back from
time to time (R. 51).  He was receiving treatment and pain medication for back and
knee pain from Dr. Agrawald, but stopped when he lost his insurance (R. 52, 53).

Since then, the doctor he sees now treats his back and leg pain with anti-inflammatory medication and methadone because it is cheaper then the medicine he was taking (R. 54, 55, 57). He has degenerative disc disease (R. 62) and takes medication for diabetes (R. 54).

The plaintiff testified that he could lift 10 or 20 pounds with his right hand, less with his left, could sit 30-40 minutes at a time, could stand 20-40 minutes at a time, and walk about 100 yards before needing to stop (R. 58). He naps usually two times a day (R. 58). He attends church fairly regularly, rarely cooks for himself, gets help from his mother with his laundry, gets help from his son with his yard, and grocery shops for himself about 3 or 4 times a month (R. 59, 60). Since May 2008 he has not gone more than 4 or 5 hours without having to lie down (R. 61). He estimates he could spend no more than 4 hours in an 8 hour day standing or walking (R. 61).

The Vocational Expert ("VE") testified that the plaintiff's previous work was as an iron worker, which is skilled, medium level work with no skills transferrable to the light or medium level (R. 46). The VE was asked to assume a person with the plaintiff's education and past work experience, who can occasionally lift 10-20 pounds with his right hand and 10 pounds with his left hand, who can sit for 30 to 40 minutes for four out of eight hours, and can stand for 20 to 40 minutes at a time but no more than four out of eight hours, who cannot bend, twist or stoop (R. 63). The

3

VE testified that such an individual could not perform the plaintiff's previous work but court perform jobs at the light level, such as nut and bolt assembler, which exist in significant numbers in the national economy (R. 64). However, the need to lie down daily on a regular basis would preclude all gainful employment (R. 65). Additionally, if medication interfered with the ability to concentrate sufficiently to maintain persistence, this would similarly preclude unskilled work (R. 65).

The medical evidence in the record at the time of the hearing demonstrates that the plaintiff had surgery in February 2008 in an attempt to alleviate his severe sleep apnea issues (R. 147) because prior treatment attempts failed (R. 152, 161, 175). He was also noted to suffer from chronic obstructive pulmonary disease, prior knee surgery and nicotine dependence (R. 151, 154).

The plaintiff was followed at the North Alabama Bone and Joint Clinic for bursitis and arthritis in his right knee (R. 177). His right knee was noted to be painful and fluid was drained from his elbow (R. 178). A notation in these records reflects that the plaintiff has applied for Social Security (R. 182).

Upon consultative evaluation, the plaintiff was noted to suffer from severe obstructive sleep apnea, causing him to feel groggy during the day, have trouble concentrating, and take naps during the day due to "extreme fatigue" (R. 185). His medical history included osteoarthritis in both knees, and bursitis (R. 185). The

examiner recorded that the plaintiff had dizziness on occasion, loss of high frequency hearing in one ear, shortness of breath and wheeze upon exertion, occasional muscle spasms in his legs, occasional swelling in his feet, and joint pain in his left elbow, knees and ankles (R. 185). Pedal edema was noted, as well as mildly tender knees (R. 186). He had normal grip strength, could heel and toe walk, and could squat halfway to the floor (R. 186). The examiner, Dr. Bruce Laughlin, concluded that the plaintiff suffered from severe obstructive sleep apnea, nicotine dependence, osteoarthritis in both knees and bursitis (R. 186).

Plaintiff medical records from his treating physicians note the plaintiff suffers from severe lower back pain for 4-5 years, ranging from a level of 7-8 up to 10, numbness and swelling in his legs and feet, COPD, and sleep apnea (R. 200). An MRI showed degenerative disc disease (R. 200). He was noted to have mid-lumbar tenderness (R. 200), and was given a diagnosis of "low back syndrome" as well as sleep apnea, COPD, and impaired glucose tolerance (R. 201). Dr. Ridgeway's records from 2008 reflect the plaintiff still suffered from severe chronic obstructive sleep apnea even after surgery and that the plaintiff woke up tired (R. 250). Dr. Ridgeway also completed a residual functional capacity questionnaire specific to sleep disorders, in which he opined that the plaintiff suffered from obstructive sleep apnea and COPD (R. 280). He stated the plaintiff had "recurrent daytime sleep

attacks" usually once a day for 45-90 minutes at a time (R. 280). In his opinion, the plaintiff would frequently have interference with his ability to maintain attention and concentration needed to perform even simple work tasks (R. 281). Dr. Ridgeway offered no opinion on plaintiff's physical abilities to perform work related activity, but did state the plaintiff was likely to be absent from work more than five days a month due to his impairment (R. 282).

The plaintiff was followed by Dr. Jerrel McAnnally for several years. His records reflect the plaintiff complained of worsening back pain in July and October 2008, radiating to his left leg, made worse by bending and climbing (R. 213, 215). The plaintiff was noted to have a history of lower back pain with degenerative disc disease and spinal stenosis (R. 213). At the time, his diagnoses included osteoarthritis, low back pain, lumbar disc disease, sciatica, and obstructive sleep apnea (R. 214, 216).

Dr. McAnnally's records reflect the plaintiff complained of his feet and toes tingling (R. 207), and diagnosed the plaintiff with degenerative disc disease and neuropathy (R. 208). He ordered an MRI and x-rays, which found degenerative disc disease with disc interspace narrowing at L2-3, L3-4, and L5-S1, as well as minor facet arthropathy in his lower lumbar spine (R. 211, 217). Additionally, straightening of the lumbar spine was thought related to muscle spasms and advanced desiccation

of disc material was seen at the L5-S1 interspace level (R. 211).  X-rays of plaintiff's knees reflect mild osteoarthritis (R. 218).

The plaintiff also saw Dr. Aggarwal from 2003 until 2008 for pain management due to chronic low back pain and fibromyalgia (R. 220-240), for which he received narcotic pain medication (R. 221).  The plaintiff stated he received benefit from the medication, but was building up a tolerance (R. 220-221).  Dr. Aggarwal's records reflect that the plaintiff had a S1 joint dysfunction and neuropathic pain, as well as a lot a muscle spasms (R. 223-224).  Lidocaine injections were tried (R. 226, 231-232, 235, 236, 237).  Additionally, Dr. Aggerwal noted chronic neck pain and low back pain due to arthritis (R. 227-230, 233).

The plaintiff suffered a myocardial infarction in October 2009, for which he was hospitalized (R. 255-273, 286-289, 300-302).  He was discharged with instructions to avoid heavy lifting for ten days, then he could resume his regular activity (R. 286).  However, his diagnoses include coronary artery disease, tobacco abuse, dyslipidemia and chronic pain syndrome (R. 286).

**Standard of Review**

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

7

If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990).  "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).  This court also must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v.  Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993).  No presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with

sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11ᵗʰ Cir.1990); *Walker*, 826 F.2d at 1001. When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11ᵗʰ Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered from obstructive sleep apnea, degenerative disk disease of the lumbar spine, history of multiple knee surgeries and a history of narcotics addiction,[2] which are severe impairments, but

---

[2]No support for a history of narcotics addiction is found in the record. No doctor has stated that the plaintiff was malingering or drug seeking in order to obtain narcotics.

none of which, singly or in combination, met or medically equaled the criteria of any of the listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 13). The ALJ specifically found the plaintiff's coronary artery disease, and status post myocardial infarction to be non-severe impairments (R. 13).

The ALJ considered the plaintiff's subjective complaints, but found them not to be credible to the extent they were inconsistent with the ALJ's determination of the plaintiff's residual functional capacity assessment (R. 20).  Despite seven years of treatment for back pain, the ALJ apparently ignored all of the medical records regarding its severity because "[t]he claimant admitted he lives in a home alone and he is able to take care of his personal hygiene, prepare some meals, go grocery shopping , visit with his family and friends, and he attends church" (R. 21).

The ALJ further decided to ignore Dr. Ridgeway's findings regarding the plaintiff's limitations from severe sleep apnea, by merely stating that the plaintiff saw Dr. Ridgeway only every six months for routine follow up visits, and that his opinion was not consistent with his own medical findings (R. 22).  The ALJ wholly fails to actually point to any finding by Dr. Ridgeway that is contradicted by Dr. Ridgeway's opinion.

The ALJ determined that the plaintiff had a residual functioning capacity to perform work at the "light" level, based on his determination that the plaintiff could

frequently lift and carry 10 pounds with his right hand, 10 to 20 pounds with his left

hand, and occasionally lift and carry 30 pounds with both hands, that he could sit for

30 to 40 minutes at a time for up to 4 hours a day and stand/walk for 20 to 40 minutes

at a time up to 4 hours a day, although he was also limited to walking no more than

100 yards at a time, and needed to avoid bending, twisting or stooping[3] (R. 19).

Based on the ALJ's conclusion that the plaintiff could perform such work, he

determined any testimony otherwise was not credible (R. 20).

The ALJ thus discounted each of the plaintiff's treating physicians and their

findings.   The ALJ's logic for such a conclusion was that the plaintiff "has not tried

and not made any effort in trying to work since being laid off" (R. 24).  The ALJ then

hypothesized

> He probably could perform most of his past work as generally performed
> and he probably does have many marketable skills.  He appeared strong
> at the hearing.   His past work was classified as requiring medium
> exertion.   He was given the benefit of the doubt that his residual
> functional capacity is light exertion.... He worked for the same company
> for many years and the company was under financial strain due to a
> down turn in the business and nearly 300 employees were let go in
> November 2007.   He said he had worked at the same factory since
> October 7, 1980.... His particular job was outsourced.... He said he is
> eligible to collect a retirement but his retirement was deferred until he
> meets retirement age and he could not recall what age he can collect his

---

[3]The employee who completed the plaintiff's Disability Report - Field Office noted that
the plaintiff "[r]ose stiffly from the chair at the end of ove[r] 1 hour interview and walked with
limp when leaving the interview" (R. 122).

retirement.  He is currently 53 years of age.  The undersigned got the impression that claimant was not being frank; that appears to be something he should know or something he should be looking into.[4] The undersigned got the impression that he could work but he did not want to work at a lower salary.  He does not want to work for anyone else by Wise Alloys.  He exhausted his unemployment benefits unless he is eligible for a future extension.  In 2005 he earned $58,084, 2006 $60,016 and 2007 $66,406.  He has lifetime earnings of $984,340, there is no doubt that he has been a worker.  The claimant may not want to work for less than what he has made in the past but there are many light duty jobs the claimant should be capable of performing....

(R. 24).

The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir.1983). The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight."  *Lewis,* 125 F.3d at 1440; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

*Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir.2011).

---

[4]The plaintiff actually testified he believed he would be able to draw his retirement at age 62 (R. 41).

In the facts before this court, the ALJ chose to ignore the opinion of Dr. Ridgeway, a pulmonologist, because the plaintiff did not see Dr. Ridgeway frequently enough and because Dr. Ridgeway's opinion was "not consistent with his own medical findings..." (R. 22).  The ALJ offers no  opinion on how often someone must see a sleep specialist to actually suffer from sleep apnea so severe it interferes with his daily activities, and points to no evidence with which Dr. Ridgeway's opinion is actually inconsistent.[5]  The fact that the ALJ believes that the plaintiff does not want a lower paying job is not evidence that the plaintiff's sleep apnea does not interfere with his ability to work.

Similarly, there is no evidence which refutes the level of back pain claimed by the plaintiff.  He testified that even if called back to work, he could not perform the lifting and climbing the job required, and also that he walks around "like a zombie" due to sleep apnea (R. 47).  He testified he knew narcotics are addictive, but that was the only thing which let him "tolerate the pain" (R. 57).

Given that the plaintiff alleges constant grogginess and the need to lie down during the day from sleep apnea, back pain from degenerative disc disease, and knee

---

[5]The ALJ's blatant decision to ignore the opinion of Dr. Ridgeway and "play doctor" himself is evident from the hearing transcript, where the ALJ decides that one sleep study shows "your sleep efficiency was 94 percent.  So, that doesn't, you know, sound anywhere near, you know, what you just talked about" (R. 49).  Plaintiff's counsel responded, "if I could just point out on 5-29-08 Ridgeway had indicated that he had severe chronic obstructive pulmonary sleep apnea and I don't know if I'm capable of interpreting that sleep study..." (R. 50).

pain from osteoarthritis, and given that these limitations are found credible by the plaintiff's treating physicians, the ALJ did not establish good cause to ignore these opinions.

The Eleventh Circuit has specifically rejected the ALJ's approach here, that being merely to state that he disagrees with the medical evidence.  In reviewing a similar opinion, the Court stated:

> The decision states only that the ALJ "has carefully considered all of the testimony ... and exhibits ... and has given weight to each as he feels should be properly accorded to it." This statement tells us nothing whatsoever it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it. What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979) (quoting *Arnold v. Secretary of HEW*, 567 F.2d 258, 259 (4th Cir. 1977)).
*Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981).

The ALJ's disregarding of all evidence that contradicted his very own opinion, discounting the records of the plaintiff having a heart attack in October 2009, and ignoring the repeated references to the severity of plaintiff's sleep apnea, constituted legal error.  Lending credence to the severity of limitations claimed by the plaintiff

are two separate sleep studies, six years of treatment records for back pain, and doctors' willingness to prescribe narcotic pain medication for plaintiff's back pain (See e.g., R. 238).

Under the "treating physician rule," an ALJ may not reject a treating physician's opinion without good cause. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991). Good cause exists if the opinion is wholly conclusory, unsupported by the objective medical evidence in the record, inconsistent within itself, or appears to be based primarily on the patient's subjective complaints. *Id.*; see *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir.2004); *Lewis*, 125 F.3d at 1440. None of these exceptions is relevant here. "[A]s a hearing officer [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir.1992). *See also Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir.1986). The ALJ cannot arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985).

No medical evidence contradicts the plaintiff's physicians' conclusions, and none of them opined that the plaintiff was malingering. Rather, they demonstrate that each of the plaintiff's treating physicians took his complaints seriously and has tried various treatments for the plaintiff's symptoms, although many such treatments have

15

been unsuccessful. The court finds the record devoid of substantial evidence to support the decision of the ALJ.

Rather, the ALJ seemed to rely on his own opinion of what a disabled person should look like and then denied benefits to the plaintiff based on this preconceived profile, because the plaintiff "appeared strong at the hearing" (R. 24). In the Eleventh Circuit, it is not appropriate for the Administrative Law Judge, who is not a medical expert, subjectively to arrive at an index of traits which he expects the claimant to manifest at the hearing, and then to deny the claim when such traits are not observed. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982). The Eleventh Circuit has termed this "sit and squirm jurisprudence," and forbids that this method of analysis be used. *McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir.1988); *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir.1987); *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984).

The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir.1991). Here, multiple medical opinions concerning the plaintiff's pain are before the court. By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of

16

all of the medical reports in the file.  Because of this error, the court must remand this case to the Commissioner for proper consideration of the medical evidence contained in the record.

### Conclusion

Based on the foregoing, the court is of the opinion that the decision of the ALJ was founded upon errors of law, and therefore the decision of the Commissioner must be  **REVERSED** and this case is **REMANDED** for proper consideration of the evidence, proper application of the law, a hearing which comports to the holdings that such hearings are inquisitorial rather than adversarial, and any other action consistent with this opinion.

Because of the ALJ's obvious and open hostility toward this plaintiff, the court highly encourages the matter be remanded to an ALJ who is free from obvious prejudices and biases.

**DONE** and **ORDERED** the 30th day of June, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE